Ruben **SENDEJAS** and Seferino Leyvas, Appellants,

v.

**UNITED STATES** of America, Appellee.

Nos. 24339, 24939.

United States Court of Appeals, Ninth Circuit.

June 3, 1970.

Rehearing Denied in No. 24939 Aug. 7, 1970.

Kim H. Pearman (argued for 24339), Hollywood, Cal.; Thomas R. Hogan (argued for 24939), of Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for appellants.

Howard Frank (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robt. S. Linnell, Asst. U. S. Atty., Robt. L. Brosio, Chief, Criminal Division, Arnold G. Regardie, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before TUTTLE,* HUFSTEDLER and KILKENNY, Circuit Judges.

TUTTLE, Senior Circuit Judge.

Appellants, Ruben Sendejas and Seferino Leyvas, were charged along with two other defendants with conspiracy to smuggle marijuana into the United States contrary to law, 21 U.S.C. § 176a. A jury trial was held and appellants were found guilty of the charge. However, the court in treating appellant Ruben Sendejas' motion for judgment of acquittal as a motion for a new trial, found that Sendejas was guilty of the "lesser offense," conspiracy to (1) attempt to acquire or otherwise obtain marijuana or (2) to in any manner facilitate the transportation or concealment of marijuana in the United States without paying the transfer tax imposed by § 4741(a), Title 26, United States Code Annotated. 26 U.S.C. § 4744(a) (2) and 18 U.S.C. § 371. Sendejas was committed to the Attorney General for an examination to determine whether he was a narcotic addict and likely to be rehabilitated through treatment. Appellant, Seferino Leyvas, was sentenced to twelve (12) years imprisonment. This appeal followed.

Some of the facts in the case are in dispute, but the following facts can be said to be settled.

On August 11, 1968, Jesus Casanova-Leon (Casanova) was offered a $250 retainer fee in Mexico by Alberto Molino and Antonio Leon to deliver a "load car" containing 92 kilogram sized packages of marijuana to a person called "Sef" in Los Angeles, California. Casanova was stopped by two United States Border Patrolmen on U.S. Highway 80 near Pine Valley, California because they noticed a "lone Mexican driving a car and thought that he should be checked for alienage." As Casanova was being checked, an odor was detected coming from the car which the patrolmen thought to be that of marijuana. A search of the car was made and the 92 kilogram sized packages of marijuana were found. Casanova was then placed

* Honorable Elbert P. Tuttle, United States Senior Circuit Judge of the Fifth Circuit, sitting by designation.

under arrest and two customs agents were called and took over. Casanova explained then what had transpired and agreed to assist the Customs Agents in locating and catching "Sef."

There is no dispute that Casanova made several calls to appellant Seferino's home, stated that he was having trouble with the car; was first given instructions to take the car to a garage; was later told that he would be met at Denny's Restaurant; was met at Denny's Restaurant by appellant Sendejas and another man; was later given assistance in pushing the car to a service station by appellant Leyvas and two other men, and that the "load car" was driven to a used car lot formerly operated by Leyvas' family, where it was parked, and Casanova was taken to Leyvas' house, whence Casanova was later driven to a taxi stand by Sendejas and another man, where he took a taxi to a bus depot in Los Angeles.

Appellants contend here on appeal that (1) the search of the Casanova car was not a border search and the evidence should have been suppressed; (2) that the court erred in refusing to instruct the jury on entrapment; (3) that the court admitted reversible error by admitting hearsay evidence to prove the alleged conspiracy; (4) that the trial court erred in denying counsel's right to effectively confront government witnesses against appellants and (5) that the evidence was insufficient to sustain the finding of guilt.

## I.

## THE SEARCH

■■ It is now an established principle that the fruits of an alleged search and seizure shall be subject to the exclusionary rule (Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), where a motion is properly made under Rule 41(e) of the Federal Rules of Criminal Procedure. However, the person raising the motion must be a person aggrieved by the unlawful search

and seizure, or, in short, have standing to raise the issue.

■ Normally, to have standing, the person must be one "against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." Rule 41(e) F. R.C.P. The Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) modified this rule to include in the class of "aggrieved persons" not only one against whom the search was directed or had a traditional property interest in the thing searched or seized, or was legally present on the searched premises but also one who is being charged with either actual or constructive possession of the seized property. However, the Court in Jones specifically restricted this modification to "crimes of possession," for the Court held that "the *possession* on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)."

■ Here, appellants are not being charged with any crime of possession, i. e., possession of marijuana but with a conspiracy to smuggle marijuana into the United States in violation of 21 U. S.C.A. § 176a, a crime for which possession is not a necessary element. Therefore, appellants must bring themselves within the "non-modified interpretation" of Rule 41(e), a person against whom the search was directed. As this court stated in Diaz-Rosendo v. United States, (9 Cir., 1966) 357 F.2d 124, when faced with this problem:

"Applying the teaching of *Jones* and *Wong Sun* neither appellant was on the "premises" [the Buick automobile of Contrevas] where the search occurred and this conviction did not flow from the possession by either one of them of the marijuana at the time of search. The appellants come squarely within the language of *Jones* which put them in the category of

those 'who claim prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.' "

So in the case here. Appellants were not present in the car when the search was made, did not own the car, and neither was their right of privacy, under any interpretation, violated. Therefore appellants are without standing to raise the issue of the legality of the search.

## II.

### THE ENTRAPMENT DEFENSE

Appellants argue that the trial judge should have instructed the jury on entrapment since "it is without dispute that after Casanova was taken into custody his every move was dictated and directed by federal agents. * * * " We reject this contention.

As admitted by appellants, normally the defense of entrapment is available only when the crime charged is admitted. However, appellants cite Sears v. United States (5 Cir., 1965) 343 F.2d 139 as holding specifically that the defense of entrapment is available in some cases even though commission of the crime charged is denied. In Sears, supra, at 143, the court held that:

"* * * [W]here * * * the government's own case in chief injected *substantial evidence of entrapment* into the case, the defendant is entitled to raise the defense by motion for acquittal and by requested instruction to the jury. We do not think it is impermissibly inconsistent for a defendant to deny the acts charged, yet urge the court on motion for acquittal that the government's own evidence *establishes entrapment as a matter of law.*" (Emphasis added.)

It appears from the court's language in Sears that when the defendant denies both participation in the conspiracy and having committed any of the overt criminal acts charged, a necessary prerequisite for entrapment instructions is that "the government's own evidence establishes entrapment as a matter of law." This court in Ortiz v. United States (9 Cir., 1965) 358 F.2d 107, 108 (1960) in citing Ortega v. United States (9 Cir. 1965) 348 F.2d 874, 875–876, stated that:

"Entrapment is a word of art having a precise definition in the law. This definition attempts to delineate what entrapment is as well as what it ordinarily is not. It is

'the act of a government officer or agent *ordering a person to commit a crime not contemplated by him,* for the purpose of instituting a criminal presentation against him. But the mere fact of an officer in furnishing the accused an opportunity to commit the crime when the criminal intent was already present in the accused's mind is not ordinarily entrapment. (emphasis added.) Black's Law Dictionary, 4th ed., p. 627.' "

Therefore, for entrapment to be established as a matter of law, it is necessary for the government's evidence to show that the "criminal design for the crime charged originated with government officials and was implanted in the mind of an innocent person so that he was induced to commit a crime that he was not otherwise predisposed to commit. In Sears, the government's evidence showed that "It was Davis [working for the government] who was the *initial instigator* of the unlawful collaboration, in that he sought out Sears and suggested that Sears supply him with protection [an illegal act]."

The government's evidence in this case does not "establish an entrapment as a matter of law," or "substantial evidence of entrapment," for the evidence clearly shows that the government was *not* the *initial instigator,* but that the criminal intent of the conspiracy had been set in motion before the custom agents became involved and that the telephone calls which Casanova made at the customs agents' instructions did not plant ideas of a criminal deed into

the minds of innocent individuals. The government's evidence established only that it provided appellants with the opportunity which they had anticipated and thereby commit a criminal act which they were predisposed to commit; the receipt of the load car (which they apparently thought contained the 92 kilograms of marijuana).

## III.

### HEARSAY EVIDENCE

Appellants contend that the trial court committed reversible error by admitting hearsay evidence to prove the existence of the alleged conspiracy. We disagree.

It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator if at least a prima facie case of the alleged conspiracy is made. This falls within the general rule that any act of declaration by one co-conspirator committed in furtherance of the conspiracy and during pendency, is admissible against each co-conspirator provided that a foundation for its admission is laid by independent proof of the conspiracy. Ong Way Jong v. United States, (9 Cir., 1957) 245 F.2d 392, 395. 72 Har. L.R. 984–85.

Appellants cite Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942) to support their contention; however, the court in Glasser clearly stated "that * * * such declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof aliunde that he is connected with the conspiracy * * * " Glasser is only a restatement of the general rule, for it clearly held that the hearsay testimony is admissible if there is evidence drawn from sources other than the hearsay testimony of the co-conspirator. The court in Glasser went on to say that "other evidence tending to connect Glasser with the conspiracy was rather meager by comparison."

Therefore, the question here is whether the government made at least a prima facie case of the alleged conspiracy beyond the testimony of Casanova that he was told by Molina and Leon in Mexico to deliver the load car to appellant Sef in Los Angeles.

The trial court originally admitted the testimony of Casanova with the precautionary instruction that the testimony was not "offered for the purpose of proving the truth of the conversation and not admissible at [that] point of the trial against any of the defendants." This procedure has been approved by the courts in Parente v. United States (9 Cir., 1959) 249 F.2d 752 and also in Costello v. United States (2 Cir., 1965) 352 F.2d 848.

The government, here, introduced independent evidence to establish the conspiracy which, therefore, made any hearsay testimony admissible. Casanova testifying for the government stated that in his conversations with Sef or one of the co-conspirators, he told them that he was "bringing the car," "that he [Casanova] told him [Sef] that he was Molina" and "that the car was smelling quite a bit" and that he was scared because he was suspecting that somebody was following him. The government then introduced evidence as to how Sef and the other co-conspirators reacted beyond the testimony of Casanova which reasonably established a prima facie case of the alleged conspiracy without including any of the hearsay testimony. Thus, the hearsay here did not "lift itself by its own boot straps to the level of competent evidence," Glasser, supra, 315 U.S., at 75, 62 S.Ct., at 467, but was lifted by independent evidence establishing the alleged conspiracy.

## IV.

### GOVERNMENT WITNESSES.

Appellants argue that they were not given the opportunity to "effectively" confront the government witnesses against appellants primarily because (1) of the denial of Jencks Act Statements

prior to trial and the denial of a "reasonable" continuance during which to prepare, after the trial had started and Casanova had testified, and (2) they had to cross-examine Casanova through an interpreter since they did not know he understood "English."

Rule 16, F.R.C.P. deals generally with pre-trial discovery in a criminal case; however, as to demands for production of statements and reports of government witnesses other than defendants, 18 U. S.C. § 3500 (The Jencks Act) controls. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

There is nothing as plain as the statute in terms of stating that no pretrial statement in the possession of the government shall be subject to subpoena, discovery or inspection until the individual witness *has testified on direct* examination in the *trial of the case* and then only after proper motion by the defendant.

■ It is clear that appellants were requesting statements of some of the government witnesses prior to their testifying on direct examination. Therefore, the trial court was completely correct when it stated in response to appellant's motion to inspect the statements of the agents that "It is not until the witness has testified that he [defendant] is entitled to that [statement]."

■ After Casanova testified on direct examination, appellants were given a copy of his Jencks Act statement. However, appellants contend that they did not have "enough" time to study it. While the Act does not state how much time should be allowed once a motion is granted for a Jencks Act statement, it appears that the trial judge in his discretion has the right to determine how much time is reasonably needed and to make allowances if necessary. Here, appellants were given a copy of Casanova's statement the *day* before Casanova was cross-examined and the court reserved cross-examination of Casanova until the afternoon of the following day. It is true that there was only one copy of Cas-

anova's statement provided for use by the three attorneys but appellant admits that "Now, I concede, Your Honor, that Mr. Linnell (government attorney) graciously offered to make copies of this statement for me last night; however, at that time there was no available document here for him to copy. Mr. Pearman (one of the defense counsel) had the only copy. He was not available so there was no copying." Therefore, appellants have not established a clear case of abuse of discretion by the trial judge's not granting a continuance. Moore v. United States (5 Cir., 1968) 394 F.2d 818, 819, cert. den. 393 U.S. 1030, 89 S.Ct. 641, 21 L.Ed.2d 573 (1968).

## V.

### SUFFICIENCY OF THE EVIDENCE.

Appellant's contention that the evidence is insufficient to sustain the finding of guilt is nothing more than a "residuary catchall argument." There was sufficient evidence introduced, as has already been discussed, that the jury could have reasonably, as it did, conclude that appellants were guilty of the conspiracy as charged. We do not find guilt based solely on association.

The judgment is affirmed.