**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Terry CURRAN, Defendant-
Appellant.**

**No. 72–3180.**

United States Court of Appeals,
Ninth Circuit.

May 28, 1974.

J. David Franklin (argued), Odorico, Franklin & Herring, San Diego, Cal., for defendant-appellant.

Thomas M. Coffin, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

## OPINION

Before DUNIWAY and TRASK, Circuit Judges, and LUCAS,* District Judge.

LUCAS, District Judge:

Two men, Garcia and Lovio, drove across the United States border in a Ford Pinto about 5:55 p. m. on June 1, 1972. Because this car was listed as a possible stolen car on a computer printout, it was stopped at the Calexico, California, Port of Entry. A customs agent, Wilburn Sears, searched the vehicle and found marijuana debris beneath the back of the front seat. Sears let the vehicle and its occupants go; but he and another agent, Louis Richenberger, followed it at a distance. They kept the car under surveillance as the men traveled to El Centro, California.

The Pinto first stopped at 302 Holton Road, El Centro, where customs agents had made a purchase of narcotics some time previously. Agent Sears saw the men leave the car, but he could not see whether they entered the house. After fifteen minutes the car departed.

The car went to 1916 Cooley Road, El Centro, and the occupants stayed there from five to ten minutes. Then they drove around El Centro for fifteen to twenty minutes and stopped at a hospital, where they stayed an hour. After that they went back to the Cooley Road address.

From Cooley Road they traveled to Kaibab Apartments in El Centro. A suspected smuggler parked near them, but the surveillance agents had no rea-

son to believe that he and the car's occupants were then engaged in smuggling.

After leaving the Kaibab Apartments, the men drove the Pinto onto Interstate 8 and proceeded west. The trailing officers followed them about 35 miles. Near Jacumba, California, the officers stopped the car because they had heard over the radio that a load of contraband drugs had been delivered to 1916 Cooley Road, where the Pinto had stopped twice. The Pinto's occupants were identified as Garcia and Lovio together with a third person, Garcia's brother. A cursory examination of the car revealed nothing. Letting the Garcias and Lovio go, the agents went back to the Cooley Road area.

When they arrived, they joined a team of officers who had gone to the Cooley Road area because of the information about the contraband drugs. The information itself had come from an informer's tip. At 9:30 that evening the confidential informant had told Delbert Polish, an agent of the Bureau of Narcotics and Dangerous Drugs, that 50 to 60 kilograms of marijuana had been brought to 1916 Cooley Road. The informant had described the delivery car, a white Dodge, and its driver. He also told Polish that the marijuana would be shipped out of Cooley Road in small quantities. Polish had reason to believe in the informant's reliability because the informant had provided accurate information on three prior occasions. After the tip, agents from the Bureau of Narcotics and Dangerous Drugs, the Customs Agency Service, and the Imperial County Sheriff's Office kept watch over the house at 1916 Cooley Road.

Between 10:00 p. m. and midnight[1] three cars left the house and the agents stopped them. In the first car, driven by Carlos Bowker, agent Robert C. Walker of the Bureau of Customs found one marijuana seed. The second one, driven

---

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

1. The exact time of each car's departure is not clear from the record, but all were stopped at times between 10:00 p. m. and midnight.

by Robert E. Gross, Jr., was not searched, according to Agent Guillermo Ortiz of the Bureau of Narcotics and Dangerous Drugs. But the third car, driven by Stanley H. Lewis, contained three kilograms of marijuana, which was found by a customs agent named Cavitt.

At some time before midnight, the surveillance crew decided to raid the Cooley Road house. Shortly after midnight the officers moved. While other agents covered the exits, Wilburn Sears and Robert Walker approached the front door, which was opened by Ronald J. Greenlee and the defendant, Michael Terry Curran. After the agents had obtained identification from Greenlee and Curran, Agent Sears smelled a faint odor of warm, unburnt marijuana. Sears walked past Greenlee and Curran and into the house. He went through one room, containing a bed, and into a second one. There he saw a table containing marijuana debris and a paper bag. As Sears got close to the bag, he observed marijuana in it.

Arresting Greenlee and Curran, the agents proceeded to search through the house. In a cupboard they found about 50 kilograms of marijuana, and in a tire they found some more marijuana.

Greenlee, Curran, and others were brought before the United States District Court for the Southern District of California. Curran was under a charge of violating 21 U.S.C. § 841, which forbids possession of a controlled substance with intent to distribute it. Marijuana is classified as a Schedule I Controlled Substance by 21 U.S.C. § 812(c)(I)(c)(10). The offense is a felony carrying a maximum term of five years or a fine of $15,000 or both. 21 U.S.C. § 841(b)(1)(B).

The defendants moved to suppress the marijuana found at the El Centro house. The motion was the subject of an exhaustive hearing on August 9 and 10, 1972, before Judge Howard B. Turrentine. At that hearing, Sears and other members of the surveillance party testified. During the hearing, Curran requested the production of reports made by Agent Polish. The judge denied this on the ground that the Jencks Act, 18 U.S.C. § 3500, did not cover the reports. The judge granted the defendants' motion to suppress the marijuana found in the cupboard and the tire but denied it with regard to the marijuana found on the table.

Thereafter the government filed an information charging Curran with simple possession of 1½ lbs. of marijuana, the amount found on the table. This offense, a violation of 21 U.S.C. § 844, is a misdemeanor. Curran pleaded not guilty and waived a jury trial. Pursuant to a stipulation, the case was submitted on the evidence heard at the motion to suppress. The judge found Curran guilty and placed him on probation for one year under conditions which included payment of a $500 fine.

On this appeal Curran challenges the judge's decision not to suppress the 1½ lbs. of marijuana. Curran contends that all of the marijuana, including that found on the table, was obtained by an illegal search and seizure. In addition, Curran contends that the district judge erred in denying his request for production of the agent's reports at the suppression hearing.

### I. The Search at 1916 Cooley Road

Under Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), the search of a home is not lawful unless the officers have probable cause and in addition have a search warrant or an excuse for not having one. Curran does not contend that the agents lack probable cause; in fact, Curran concedes its existence. He argues only that the agents lacked a warrant and lacked an adequate excuse for not obtaining one.

The government relies principally on an argument based on the plain-sight doctrine. If an officer is somewhere where he has a right to be and observes an object in plain sight, he may seize

that item. The latter action is not a "search"; the restrictions on searches, such as the requirement of a warrant, do not apply. Ker v. California, 374 U. S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The government would expand this somewhat by treating the smelling of marijuana as part of the viewing of it or as the equivalent of the viewing of it. The argument has two steps, the first of which is justification for the officers' presence at the front door. According to the government, officers can go to a door to ask questions at any time and need no warrant for this. The government relies on Sears' testimony that he approached the door only to make inquiries, not to conduct a search. (R.T. 59–60). At the door, one agent smelled marijuana. The government argues that the marijuana was then in plain sight or in plain smell or that a search and seizure was justified by an exigent circumstance, the fear that Curran and Greenlee would dispose of the marijuana if the agents left to get a warrant.

### A. Plain Sight.

■ For the seizure to qualify as an instance of plain view, the officer must be rightfully present at the place and time that he sees the goods. The government's theory would account for Sears' presence at the outside door. But Sears did not see the marijuana until he had crossed the threshold and entered other rooms. The suggested justification for presence at the door, based on the officer's avowed purpose of questioning Greenlee and Curran, could not extend to Sears' movement past Curran and Greenlee into other rooms. The government's theory fails to validate his presence in those rooms, and the plain-sight theory founders.

■ The government touches upon the theory sometimes advanced that the courts should acknowledge a "plain smell" concept analogous to that of plain sight. The smell of marijuana has been held to be a fact establishing probable cause. Johnson v. United States, 1948,

333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Fernandez v. United States, 9th. Cir., 1963, 321 F.2d 283; Fumagalli v. United States, 9th. Cir., 1970, 429 F.2d 1011; United States v. Martinez-Miramontes, 9th. Cir., 1974, 494 F.2d 808 (April 10, 1974). However, before the officer could rely upon his smelling marijuana as probable cause, he would have to justify his presence at the place, i. e., the door of the house, where he detected the odor, just as he would have to justify his presence at the place from which he saw the contraband in order to rely on the doctrine of plain view. In either case, in addition, he would have to justify entering the house without obtaining a warrant. Johnson v. United States, supra. Here the justification must be exigent circumstances.

### B. Exigent Circumstances and Probable Cause.

In the attempt to justify a warrantless search by exigent circumstances, the government would have the Court validate the approach to the door because it was for questioning which requires no warrant or probable cause. The only exigent circumstances then needed would be ones justifying the intrusion past the door. The government contends that once the officers were at the door, the occupants knew of their presence and would have destroyed the evidence had the officers left to get a warrant.

■ Although Sears' declared intent was merely to identify the home's occupants, the testimony of Sears and others indicate that they anticipated the existence of the very marijuana they found and contemplated a search. One or two officers at the front door would have been enough to ascertain identities, but the surveillance crew stopped all outbound traffic and covered both the back and front doors. The police radio carried a message that the place on Cooley Road was going to be "hit." (R.T. 109). In addition, Sears' testimony on cross-examination indicates that the determina-

tion of identities was not his sole purpose:

Q. Wasn't that your purpose, to find that marijuana?

A. My purpose was to find the marijuana. That was my job.

Q. That is why you went to the residence?

A. Yes, sir.

(R.T. 44–5) Whatever Sears may have thought his purpose was, the agents had seizure of the marijuana too much in mind to permit a finding that its discovery was inadvertent. Although they intended to question the occupants, they contemplated a search and seizure. Knowing that marijuana was present and knowing that they would make their presence known to the occupants, the officers consciously established the condition which the government now points to as an exigent circumstance. If exigency arises because of unreasonable and deliberate delay by officers, it is not an exigent circumstance capable of dispensing with the requirement of a warrant. United States v. Scheffer, 463 F.2d 567 (5th Cir. 1972), cert. den., 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1973); Niro v. United States, 388 F.2d 535 (1st Cir. 1968). In this case the officers have come too close to creating their own exigency if the government's analysis of the case is followed. Instead of assuming that the advance to the door was valid and considering circumstances which might justify the further intrusion, the Court thinks that any exigent circumstances must be capable of justifying the entire raid up through the seizure of the 1½ lbs. of marijuana. Together with probable cause, such an exigent circumstance would validate the seizure of that marijuana.

■ One source of probable cause was the tip from the confidential infor-

mant. Probable cause can be based on hearsay. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In the case of a tip from a confidential informant, the officer has probable cause adequate to obtain a warrant if the officer has information about specific facts leading to the conclusion about criminal behavior and he has reason to give credence to the informer's tip. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); see Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In this case the informant had described the amount of marijuana shipped, the shipment time, the shipment vehicle, and the driver of it. Certainly he provided enough detail. The informant's reliability was evident from the three previous tips he had given which had proven accurate. The officers had further assurance of reliability when the stop of the Lewis car confirmed the informant's statement that marijuana would be taken from the Cooley Road address in small quantities.[2] The officers had probable cause before they approached the house and this is conceded by the appellant.

The lack of a warrant does not make a search unreasonable if exigent circumstances made immediate action imperative. Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Coolidge* the court declared that warrantless searches

> " 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn. . . . ' "

403 U.S. 443, 454, 91 S.Ct. 2022, 2032. In Vale v. Louisiana, 399 U.S. 30, 90 S. Ct. 1969, 26 L.Ed.2d 409 (1970), the court listed a number of the exceptions: consent to the search; response to an

---

2. An informant's reliability can also be supported by verification of some of the details of his tip. Spinelli v. United States, 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Harris, 403 U.S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971); Musgrove

v. Eyman, 435 F.2d 1235 (9th Cir. 1971); United States v. Jiminez-Badilla, 434 F.2d 170 (9th Cir. 1970). The Court need not decide whether the verification alone would be adequate in this case.

emergency; hot pursuit of a fleeing felon; and seizure of goods in the process of destruction or goods about to be removed from the jurisdiction. See 399 U.S. 30, 35, 90 S.Ct. 1969. Although exigent circumstances are to be limited and well-defined, *Vale's* listing is not exhaustive and the court did not purport to state all possible exigent circumstances nor to delineate the full extent of them. *Vale* is only illustrative of the sort of conditions which amount to exigent circumstances. In several recent cases the courts have expanded the *Vale* list. Observing that the courts have not in fact delineated exigent circumstances to any great extent, the panel in United States v. Rubin, 474 F.2d 262 (3d Cir. 1973) broadened the destruction-of-evidence circumstance beyond its *Vale* contours. There a defendant, when arrested, shouted, "Call my brother." The officers knew he had delivered contraband to a garage, and the officers could conclude that the shout was a signal for someone to notify the persons in the garage. They would then destroy the contraband. The officers could search the garage because they could reasonably conclude that the contraband was in danger even though they did not know it was being destroyed and even though it was not actually being destroyed. Similarly, in United States v. Blake, 484 F.2d 50 (8th Cir. 1973), the court held that an exigent circumstance existed when contraband was threatened with imminent removal or destruction. It declined to read *Vale* as a complete description of all possible exigent circumstances. While *Vale* may indicate the degree of exigence necessary, it does not establish rigid guidelines.

■ The same circumstances—potential removal or destruction of evidence—is involved in this case. When the officers closed in on the Cooley Road home, they had more than just knowledge of the presence of marijuana. The informant had told them the marijuana would be shipped out in small quantities. The officers had intercepted three vehicles leaving the home, and in the last car they found a substantial quantity of marijuana. This warned the officers that the marijuana was being removed right then. The officers had not delayed unreasonably before they stopped the Lewis car. After they stopped it, they knew that several cars had already passed and reasonably could expect more. By the time a warrant could be obtained, much or all of the marijuana could have been loaded into cars for transportation. The threat of imminent destruction of evidence or removal of it is an exigent circumstance justifying a warrantless search. United States v. Blake, 484 F.2d 50 (8th Cir. 1973); Gaines v. Craven, 448 F 2d 1236 (9th Cir. 1971); Theobald v. United States, 371 F.2d 769 (9th Cir. 1967). Here the removal was more than imminent.

When the agents discovered the movement of marijuana, they had the house surrounded and were stopping vehicles as they left. They could have simply kept on doing that until someone obtained a warrant, but such a siege would not have been reasonable or adequate. They had already stopped three cars; since the marijuana was to be reshipped in small quantities, many more cars might arrive and depart. To intercept them all would be not just inconvenient but burdensome. It would have immensely complicated the situation and perhaps have required a large number of officers. It would have inconvenienced all persons, guilty or innocent, who happened to stop at the house and then leave. In addition, the siege could easily be discovered. An arriving car might pass by the departing one stopped by the agents; the officers might have to release a driver who cooperated with the house occupants but whose car had no evidence inside. In various ways word of the siege could reach the house, and the occupants would have disposed of the evidence. With the attendant risk of discovery a long siege was not feasible.

This fear of discovery is itself an exigent circumstance. In United States v. Bustamante-Gamez, 488 F.2d 4 (9th Cir. 1973), police officers entered a garage

to search a car they had followed and to arrest anyone in control of it. They had reason to believe the driver had discovered them. The court held that the potential discovery was an exigent circumstance justifying the entry and search. Writing for the panel—the same panel as the present one—Judge Duniway said:

> At this point it may have been theoretically possible for the officers to withdraw and obtain a warrant. However, the method of investigation had made it more than probable that the occupants of the garage knew or might at any time learn of their presence.[3] Thus there was a substantial possibility that they would try to escape or destroy the evidence.

488 F.2d 4, 8–9. In this case, the arrests in the area had already made discovery possible, and a siege around the area would have magnified the risk. The potential discovery was a second reason for not waiting for a warrant.

 These facts justified an immediate raid. While conducting that raid, Officer Sears found the 1½ lbs. of marijuana out on a table. At the time of its discovery, the officers had not secured the house and did not know whether they had accounted for all the occupants. Since the house had not been secured and the occupants had not been accounted for, the original exigent circumstances continued to justify the action which turned up the 1½ lbs. of marijuana.[4] The trial court correctly denied the defendant's motion to suppress the evidence.

## II. Production of the Officer's Reports

 The defendants seek to have the Court interpret the Jencks Act in a way that requires production of an agent's reports at a pretrial suppression hearing. The Jencks Act, 18 U.S.C. § 3500, states:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

The suppression hearing was in fact the trial, but only because the parties stipulated to that at a later time. The Jencks Act does not apply, and the documents need not have been produced. The trial judge correctly refused to order production.

Affirmed.

---

3. (Court's footnote 4) The court's footnote reads:

> We have no doubt that the officers were making a good faith attempt to locate the car; they were not creating exigent circumstances. A different case would be presented if there were the possibility of abuse. As we said in Davis v. United States, 9 Cir., 1964, 327 F.2d 301, 306:
>
> "On this excursion of law enforcement officers across the quagmire of search and seizure without warrants of any kind, only a thin chain of unusual circumstances upon which beamed the most benign smile of the Goddess of Fortune has enabled them to escape safely and legally with their usually forbidden fruit."

4. The 50 kilos were not discovered until after the occupants had been arrested and the house had been secured. The 50 kilos were not in the open but in a closed cupboard. The trial judge suppressed this. It was not within the scope of a search justified by the circumstances. Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).