UNITED STATES of America,
Plaintiff-Appellant,

v.

Attilio Joe SPAGNUOLO et al.,
Defendants-Appellees.

No. 74–1272.

United States Court of Appeals,
Ninth Circuit.

April 21, 1975.

Robert H. Plaxico, Atty., Crim. Div., Dept. of Justice (argued), Washington, D. C., for plaintiff-appellant.

George L. Cook and Arthur W. Ruthenbeck, Asst. Federal Public Defenders, (argued), San Francisco, Cal., for defendants-appellees.

## OPINION

Before ELY and WALLACE, Circuit Judges, and LYDICK,* District Judge.

WALLACE, Circuit Judge:

Spagnuolo and 12 others were charged, in one or both counts of a two-count indictment, with conducting an illegal gambling enterprise in violation of 18 U.S.C. § 1955. Each count was based on evidence derived from different wiretaps. The government appeals from an order suppressing evidence derived from the questioned wiretaps. We reverse.

Both wiretap authorizations directly involved in this case were by court order pursuant to 18 U.S.C. § 2516. Prior to trial, a motion was made to suppress all evidence derived from these wiretaps, in which it was asserted that: (1) the application for the wiretap supporting count one was approved pursuant to defective Justice Department procedures; and (2) probable cause for the wiretap supporting count two was derived from previous illegal wiretaps, among them the wiretap involved in count one. The district court indicated that it would grant the motion to suppress evidence derived from the wiretap involved in count one and ordered a hearing before a magistrate on the legality of the wiretap involved in count two.

At the magistrate's hearing the government called four F.B.I. agents and

a local deputy sheriff in an effort to establish the untainted derivation of probable cause for the questioned wiretap. The movants requested, for purposes of impeachment, copies of investigative reports, memoranda and statements of the F.B.I. agents relevant to their testimony. The government opposed the motion to produce, claiming that the Jencks Act, 18 U.S.C. § 3500, permitted it to withhold such documents until its witnesses testified at trial. In accord with the magistrate's recommendation, the district court ordered production, relying on its discretion to determine the scope of cross-examination.

When the government refused to comply with the production order, the district court ordered the magistrate to strike the testimony of three of the F.B.I. agents. The magistrate then found, and the district court agreed, that the government had failed to sustain its burden of proving lack of taint. The order suppressing evidence from both wiretaps followed, resulting in this appeal.

■ The district court erred in suppressing the evidence derived from the count one wiretap. The Justice Department application in support of this wiretap was defective but not fatally so. The application identified former Assistant Attorney General Wilson as the official who had authorized the application. Although Mr. Wilson had been specifically designated to authorize wiretaps pursuant to 18 U.S.C. § 2516, he did not authorize the application for the count one wiretap. His name was signed by another who had not been specifically authorized. However, former Attorney General Mitchell did authorize the wiretap and so indicated by initialing a memorandum to that effect. In a case involving precisely this defect, we held such an authorization invalid. United States v. Chavez, 478 F.2d 512 (9th Cir. 1973). But while the present case was pending on appeal, the Supreme Court

* Honorable Lawrence T. Lydick, United States District Judge, Central District of California, sitting by designation.

reversed *Chavez* and held that the defect did not render the affected wiretap illegal. United States v. Chavez, 416 U.S. 562, 579–80, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). The same result must obtain here. The evidence derived from the count one wiretap authorization should not have been suppressed.

■ The district court's ruling on the count two wiretap must also be reversed. That wiretap was alleged to be illegal in part because probable cause for the wiretap was founded upon evidence derived from the count one wiretap. Since the count one wiretap is legal under *Chavez*, the district court must reconsider the alleged taint of the count two wiretap.

■ The order suppressing evidence derived from the count two wiretap must also be reversed because the district court erred in ordering production of statements of government witnesses who testified at the suppression hearing. This precise question was before us recently. We held that the Jencks Act prohibits court-ordered production of statements of government witnesses at a pre-trial suppression hearing. United States v. Curran, 498 F.2d 30, 36 (9th Cir. 1974); see Sandejas v. United States, 428 F.2d 1040, 1045–46 (9th Cir.),

cert. denied, 400 U.S. 879, 91 S.Ct. 122, 27 L.Ed.2d 116 (1970). This holding is in accord with the decisions of other circuits. United States v. Sebastian, 497 F.2d 1267, 1269–70 (2d Cir. 1974); United States v. Montos, 421 F.2d 215, 220–21 (5th Cir.), cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970); see Robbins v. United States, 476 F.2d 26, 31–32 (10th Cir. 1973).

■ It is argued, however, that *Curran* is distinguishable because 18 U.S.C. § 2518(10)(a) requires that hearings on the suppression of wiretap evidence be held before trial. It is argued that since section 2518(10)(a) prevents postponement of the suppression hearing until trial, the suppression hearing must be deemed to be part of the trial. We do not find this argument persuasive because the premise upon which it is based is incorrect. Section 2518(10)(a) does not require that the suppression hearing be held before trial but only that the motion to suppress be made before trial. It does not deprive the district court of discretion to postpone the hearing until the trial on the merits. Fed.R.Crim.P. 12(b)(4).[1]

■ We likewise reject the argument that the district court's order to strike testimony of government witness-

1. Our Brother Ely forcefully argues that postponement of the suppression hearing until the trial on the merits is not fully consistent with the right to appeal granted the government by 18 U.S.C. § 2518(10)(b). *See post* at p. 821, n.1. As he notes, substantial questions of double jeopardy would be raised if the government chooses to appeal from a suppression hearing held during trial.

However, we interpret 18 U.S.C. § 2518(10)(a) to permit postponement of suppression hearings until trial for two reasons. First, section 2518(10)(a) already contemplates the risk of appeals barred by double jeopardy because it allows suppression motions during trial when "there was no opportunity to make such motion or the person was not aware of the grounds of the motion" before trial. Second, for the same reasons advanced by our Brother Ely, we are reluctant to deprive the defendant of any possibility of discovery under the Jencks Act. Because we are bound by United States v. Curran, 498 F.2d 30, 36 (9th Cir. 1974), a holding that section 2518(10)(a)

forbids postponement of the suppression hearing would make it impossible for a defendant to view Jencks Act statements during the hearing.

Our interpretation of section 2518(10)(a) is not inconsistent with United States v. Moon, 491 F.2d 1047, 1048–50 (5th Cir. 1974), and United States v. Sisca, 361 F.Supp. 735, 740–41 (E.D.N.Y.1973) (alternate holding). Both cases concerned motions not timely made under section 2518(10)(a). As the Second Circuit has recognized, postponement of the hearing on a timely motion presents different questions. United States v. Bynum, 475 F.2d 832, 835 (2d Cir. 1973), decision on subsequent appeal vacated on grounds not affecting this decision, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974).

We do not decide whether the testimony of government witnesses at a suppression hearing during trial is testimony "on direct examination in the trial of the case" within the meaning of the Jencks Act, 18 U.S.C. § 3500(a), (b). The question is not before us.

es was within its discretion to control the scope of cross-examination. Exclusion of testimony is precisely the remedy for government noncompliance provided by the Jencks Act. 18 U.S.C. § 3500(d). The purpose of the Jencks Act is to restrict judicial power to order discovery against the government in criminal cases. Palermo v. United States, 360 U.S. 343, 346–48, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). This purpose would be frustrated if district courts could compel disclosure, contrary to the Jencks Act, in the exercise of their discretion over cross-examination. Although district courts have wide latitude in ordering discovery in criminal cases, see United States v. Richter, 488 F.2d 170 (9th Cir. 1973), we cannot tamper with statutory restrictions upon their power. While we may encourage the government to disclose Jencks Act statements prior to the time when it is statutorily required to do so, United States v. Sebastian, 497 F.2d 1267, 1270 (2d Cir. 1974) (dictum), we cannot compel such a course. The district court's order to produce and its subsequent order to strike exceeded its authority.

Reversed and remanded.

ELY, Circuit Judge (concurring in part and dissenting in part):

I concur in the majority's reversing disposition. This is because I agree that under the Supreme Court's decision in United States v. Chavez, 416 U.S. 562, 579–580, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), the application in support of the count one wiretap was not fatally defective and that the motion to suppress the evidence obtained from the count one wiretap should, therefore, not have been granted. Accordingly, the District Court must also reconsider its ruling on the count two wiretap, because the court's decision rested upon a determination that probable cause for the count two wiretap was based upon the count one wiretap and that the evidence obtained from the count two wiretap thus constituted "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

However, I cannot agree with the majority that an additional reason for reversing the order suppressing evidence derived from the count two wiretap is that the District Court erred in ordering production of the statements of government witnesses at the pretrial suppression hearing. Under the majority's view, the accused is forced into an impossible and grossly unfair situation. A brief review of the facts of this case will, I believe, make apparent the reasons why both the magistrate and the district judge refused to countenance the unjust result that the majority opinion produces.

Under 18 U.S.C. § 2518(10)(a), enacted eleven years after the Jencks Act, a motion to suppress wiretap evidence cannot be deferred until trial, unless before trial there was no opportunity to make such motion or the person was not aware of the grounds of the motion. However, under the majority's holding an accused cannot prevail at a pre-trial suppression hearing,[1] which he waives unless he ini-

---

1. The majority writes that under 18 U.S.C. § 2518(10)(a) hearings on the suppression of wiretap evidence are not required to be held before trial. If this is true, then where, as here, the accused would be severely prejudiced at a pre-trial hearing due to his inability to obtain Jencks Act statements, the trial judge would have the discretion to postpone the hearing until trial on the merits. If the testimony of government witnesses at a suppression hearing held during trial was judicially construed as testimony "on direct examination in the trial of the case" within the meaning of the Jencks Act, 18 U.S.C. § 3500(a), (b), then the Jencks Act by its terms would render the impeaching statements discoverable. I strongly believe that this, in fairness, should be the law. It can be questioned, however, whether the proposition that a hearing on the suppression of wiretap evidence under 18 U.S.C. § 2518(10)(a) can be conducted during the trial is legally valid.

In support of the proposition the majority cites only Fed.R.Crim.P. 12(b)(4), promulgated in 1946. It would appear, however, that the legislative history of 18 U.S.C. § 2518(10)(a), as well as several recent cases construing the section, indicate that there may be a requirement that a hearing on the motion to suppress pursuant to the statute be conducted before

tiates it, because the Jencks Act does not allow him to obtain the documents necessary for the possible impeachment of prosecution witnesses. And accused persons ordinarily cannot delay their suppression motions until the time of the principal trial because, under 18 U.S.C. § 2518(10)(a), such delayed motions would not usually be timely. As the majority must recognize, the impeaching Jencks Act statements will be worthless to Spagnuolo at the time of the principal trial because, under the prosecution's

own admission,[2] it did not intend to produce at trial the witnesses called at the pre-trial suppression hearing. Rather, it proposes that it will rely at trial on the wiretapping evidence which might well have been suppressed[3] had the defense obtained access to the impeaching statements at the time of the suppression hearing. To permit the Government to utilize the Jencks Act to obtain such an unfair strategic advantage is a result which I cannot imagine that the Congress intended when it sought, in 18

trial. If this is true, then a pre-trial suppression hearing should, in fairness under the circumstances here, be treated as a portion of the trial. Perhaps the strongest factor militating against an interpretation permitting a § 2518(10)(a) motion after trial has begun is found in § 2518(10)(b), which provides that the Government shall have a right to appeal from orders granting such motions to suppress. If a hearing is postponed until trial has begun and a jury has been sworn or testimony taken, jeopardy has attached. Therefore, if the Government should then be unsuccessful on the motion to suppress, resulting in an acquittal, the prospect of double jeopardy would effectively preclude appeal by the Government and re-trial of the accused. The Senate Report accompanying 18 U.S.C. § 2518(10)(a) cautions that "care must be exercised to avoid having a defendant defeat the right of appeal . . . by waiting until trial." 1968 U.S.Code Cong. and Admin.News p. 2195. Thus, in United States v. Sisca, 361 F.Supp. 735, 740 (E.D.N.Y. 1973), the court said, in discussing the time limitations prescribed by § 2518(10)(a),

"There is no need to stress the desirability and importance of having such motions made *and determined prior* to the commencement of the trial. Delay in making such motions until after the trial has commenced where, as here, the necessary material on which to ground them was fully available to defendants in ample time to permit them to move, may have serious consequences. These consequences include long delay and interruptions in the course of the trial; the denial to the Government of an opportunity to determine what evidence it can or cannot adduce at the trial in the light of the court's pre-trial rulings on such motions; whatever legal consequences in terms of the due process and double jeopardy clauses of the Constitution may result from the impanelment of the jury; and *the serious question of whether the Government could appeal under Section 2518(10)(b) from an order granting a motion to suppress after a jury was impanelled.*" (emphasis added).

Similarly, in United States v. Moon, 491 F.2d

1047, 1049–50 (5th Cir. 1974) the court noted:

" . . . in this instance there is an explicit Congressional directive that the particular motion be made in such manner as to be appealable by the government. Underlying this requirement was a desire for uniform interpretations of the standards to be applied to motions to suppress intercepted communications. . . . The uniformity interest is not served by allowing motions improperly heard during trial to be forever insulated from the appellate review Congress sought to assure."

The fact that the § 2518(10)(a) requirement of a pretrial suppression hearing appears to contravene Fed.R.Crim.P. 12(d) is no bar to such an interpretation. As the court in *Moon, supra,* noted in a similar context:

"The government argued to the trial judge that Fed.R.Crim.P. 41 forbade his considering the motion to suppress once trial began. The last sentence of the version of 41(e) in effect when the motion was made permitted the court in its discretion to entertain the motion at trial. *To the extent that § 2518 . . . mandates pre-trial presentation, the Congressional enactment of the Omnibus Crime Control Act supersedes or modifies an inconsistent federal rule.* See 2 Moore's Federal Practice ¶ 1.02[5]; 7 Moore's Federal Practice ¶ 86.04[4]; United States v. Gustin-Bacon Div., Certainteed Products Corp., 426 F.2d 539 (CA 10, 1970) (dictum)." (emphasis added), (footnote omitted).

491 F.2d at 1050.

2. In its opposing papers the Government stated:

"If the situation were a trial and not a pretrial evidentiary hearing, none of these problems would exist for *it is highly unlikely that these witnesses would testify at trial,* and even if they did, *their testimony on direct examination would not relate to confidential informants or the other subjects covered during their direct testimony at the pre-trial suppression hearing in this case.*" (emphasis added).

U.S.C. § 3500 (The Jencks Act) to codify the rule of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

Here, the magistrate recognized the injustice of such a result when he ruled:

" . . . fairness requires production now, since the question of defendant's guilt or innocence is so intertwined in this hearing that production is required to permit effective cross examination by defendants of Government witnesses at this hearing.

\* \* \* \* \* \*

"The refusal to produce deprives defendants of any meaningful cross examination and blocks any effective method of testing the credibility of the witnesses' direct testimony at the stage of the proceeding as critical as though the question of guilt or innocence was at issue." [4]

Confronted with the defiance of the Government in refusing to comply with the production order, the District Court resolved the dilemma by ordering the magistrate to strike the testimony of three FBI agents who could not be effectively cross-examined. The court explained the basis of its ruling as follows:

"It was the Court's view they were producible under the determination of this Court that they were reasonably necessary for appropriate cross-examination in a highly significant part of the preliminary proceedings in the case which were of such significance as to in effect constitute a part of the trial of the issue in the case; and exercising the Court's discretion over cross-examination in any area of the case, the Court determined, as *Jencks* and many other cases have indicated, that it did have control over the proper scope of cross-examination in this case required the examination of the documents requested to test the testimony of witnesses who had appeared at the suppression hearing.

I pointed out that *Jencks* made clear that the Supreme Court was reaffirming in *Jencks* the propriety of a trial judge exercising liberal discretion over the nature and extent of cross-examination. It is within that scope that the order was made."

I would not hold that a defendant in a criminal case is always entitled to Jencks Act statements at every pre-trial hearing wherein the testimony of witnesses who are agents of the Government is introduced. I would hold only that where, as here, the District Court decides that the required pre-trial hearing to suppress evidence obtained from illegal electronic surveillance cannot be fairly conducted if

---

**3.** Substantial questions as to he agents' credibility were raised at the hearing. Agent Blanton stated in his affidavit in support of the wiretap application that "since Dec. 12, 1971, I have personally participated in the investigation." At the hearing, Agent Blanton testified that he was on annual leave from Dec. 11, 1971, until the middle of January, 1972, and did not personally participate in the investigation during that period of time. Agent Blanton also testified that the language contained in his affidavit was "one hundred percent" his creative product. However, cross examination revealed that his four-page affidavit was essentially identical with the affidavit of another agent in a different investigation. Further, Agents Blanton, Feeney, and Jarvis testified that they did not use any information obtained from the count one wiretap to further their investigation of gambling activities that resulted in the second count of the indictment. The F.B.I. Agents' supervisor testified that the agents had access to the count one investigative files while they were conducting their investigation and that during the period of the count two investigation the agents were free to utilize all information acquired from the count one wiretaps.

**4.** In approving the magistrate's recommendation, District Judge Schnacke remarked:

"I am simply exercising discretion that the Supreme Court found was entirely appropriate in any matter involving a delineation of the scope of cross-examination in deciding that in this case, where the issues on a suppression hearing are so significant to the case as a whole, where the facts of whether or not the case may proceed at all turns upon the determination of the factual matters presently under consideration, that the determination of that fact becomes so important to the case as to require a complete access to all of the facilities of cross-examination, including access to statements previously made."

a defendant is not allowed effectively to cross-examine the government agent witnesses, then the trial court has, and must have, the discretionary power to exclude from consideration such testimony as it may find untrustworthy. *See* United States v. Foley, 283 F.2d 582 (2d Cir. 1960). *See also* United States v. Covello, 410 F.2d 536, 544–45 (2d Cir.), cert. denied, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969), reh. denied, 397 U.S. 929, 90 S.Ct. 897, 25 L.Ed.2d 110 (1970); ·cf. United States v. Sebastian, 497 F.2d 1267, 1269–70 (2d Cir. 1974).[5]

**5.** In *Sebastian,* the Second Circuit distinguished *Corvello* and refused to compel pretrial production of Jencks Act statements. It is important to note, however, that the suppression hearing in *Sebastian* did not involve a motion to suppress the fruits of electronic surveillance under 18 U.S.C. § 2518(10)(a). Nor did *any* of the other cases relied upon by the majority for the proposition that "the Jencks Act prohibits court-ordered production of statements of government witnesses at a pre-trial suppression hearing" involve hearings under § 2518(10)(a) required to be held before trial. *See* United States v. Curran, 498 F.2d 30, 36 (9th Cir. 1974); Robbins v. United States, 476 F.2d 26, 31–32 (10th Cir. 1973); Sendejas v. United States, 428 F.2d 1040, 1045–46 (9th Cir.), cert. denied, 400 U.S. 879, 91 S.Ct. 122, 27 L.Ed.2d 116 (1970); United States v. Montos, 421 F.2d 215, 220–21 (5th Cir.), cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970).