UNITED STATES of America, Appellee,

v.

Randall C. HAUSER, Appellant.

Nos. 78-2901, 78-3673.

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1979.

James S. Kempton (argued), Kempton, Savage & Gossard, Seattle, Wash., for appellant.

Dave B. Bukey, Asst. U. S. Atty. (argued), Seattle, Wash., for appellee.

Before ELY and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

ELY, Circuit Judge:

Hauser was convicted in separate trials of conspiring to possess and distribute cocaine (21 U.S.C. § 846), distribution of cocaine (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)), and possession of cocaine with intent to distribute (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)), and of possession of an illegal firearm (26 U.S.C. §§ 5861(d) and 5871) and possession of a firearm by a felon (18 U.S.C., Appendix, § 1202(a)).[1] Hauser now appeals his convictions on the ground that evidence used against him at trial should have been suppressed as the fruit of an illegal warrantless entry into his home. We affirm.

### I.

Hauser's arrest and conviction arose out of a narcotics distribution scheme that was the subject of a Drug Enforcement Administration (DEA) undercover investigation. On August 11 and August 18, 1977, an undercover DEA agent made two one-ounce purchases of cocaine from Hauser's co-defendant, one Budnick, who identified his source to the agent as "Randy."

The DEA agent and Budnick then began negotiating a one-pound sale of cocaine. In the agent's presence, Budnick called his source, "Randy." The agent observed Budnick dial the digit "1" and then the telephone number, also observing the last three digits dialed. A check of Budnick's long distance telephone records confirmed that Budnick had called a telephone registered to Hauser at the time in question and that the last three digits observed by the agent matched the corresponding digits of Hauser's telephone number.

After Budnick reported to the undercover agent that "Randy" had received shipment of the cocaine, a delivery was arranged for late Saturday night, August 27th. When that sale fell through because, according to Budnick, "Randy was not playing straight," another meeting was planned for early Sunday morning around 3 a. m.

During this time, other DEA agents were watching Hauser's home in an outlying area of Seattle, Washington. They observed Budnick's truck arrive there early Sunday morning, August 28th, around 2:30 a. m. and then leave shortly thereafter. A few minutes later, Budnick arrived for the pre-arranged meeting with the undercover DEA agent and gave him a one-ounce sample of the cocaine, telling him the sale could be completed that day. The agent showed several thousand dollars to Budnick but would not hand over the money until he was given the remainder of the pound of cocaine. Budnick then went back to Hauser's home, where he was again observed by the other DEA agents. He returned to meet with the DEA agent about 3:45 a. m. with instructions from "Randy" that there would be no sale unless the money was turned over first. The deal was called off, and Budnick was immediately arrested.

Budnick then began cooperating with the DEA agents and told them that the cocaine he delivered to them was obtained from Hauser at Hauser's home that morning. At the agents' suggestion, Budnick then called Hauser to tell Hauser that the deal was still on. Hauser told Budnick to come over but to be sure that he was not being followed.

The DEA agents and Budnick then drove back to Hauser's home to arrest Hauser. They had neither an arrest warrant nor a

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. Appellant was charged along with a co-conspirator, Nicholas Budnick, in a seven-count indictment. Appellant's motion to sever his two firearm possession counts from the co-caine distribution counts was granted. After separate trials without jury before different judges, Hauser was convicted on all charges brought against him. Because the issues raised in Hauser's two appeals are precisely the same, we granted Hauser's motion to consolidate.

search warrant. The agents positioned themselves around the house and then rang the front doorbell. After receiving no response, but observing lights going off inside the house, the agents identified themselves and yelled to Hauser that he was under arrest. No response was heard from within the house. The agents then kicked the front door down, forcing their way into the home.

Hauser was arrested inside the house, which was briefly searched to determine if other persons were there. The agents then contacted an assistant United States Attorney who told them to forego any further search until a search warrant could be obtained. The agents complied with this instruction.

A search warrant was obtained, and the house was searched. Agents seized approximately one-half pound of cocaine contained in several packages in a basement room of Hauser's home and also seized three loaded weapons, one of which was a sawed-off shotgun.

## II.

Hauser claims that his arrest was illegal because of the forced, warrantless entry into his home. He also claims that any exigent circumstances which otherwise might have justified a warrantless entry were of the officers own making and therefore could not be raised as an excuse for dispensing with the requirement of a warrant. See United States v. Curran, 498 F.2d 30, 34 (9th Cir. 1974). While we have serious doubts about the justification in this case for the DEA agents' entry into Hauser's home without first obtaining a warrant from a detached, neutral magistrate,[2] we nevertheless find it unnecessary to reach this issue because the evidence to which Hauser objects cannot be considered the fruit of his warrantless arrest. Instead, the cocaine and firearms found in Hauser's home were seized pursuant to a lawfully executed search warrant.

Rather than immediately searching the premises after arresting Hauser, the DEA agents waited until a search warrant was obtained. The supporting affidavit submitted to the magistrate by the DEA undercover agent contained no reference to the arrest of Hauser at his home. The affidavit merely chronicled the events up until the time Budnick was to accept delivery of the cocaine at Hauser's home.

While Hauser does not claim that there was no probable cause to issue the warrant, he contends that the delay in seeking the warrant until after his arrest requires the suppression of the evidence seized subsequent to the warrant's execution as the tainted fruit of his unlawful arrest.

■ We hold, in the circumstances of this case, that the District Court correctly applied the doctrine of Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As we wrote in United States v. Harris, 501 F.2d 1, 6 (9th Cir. 1974):

> When there has been illegal police conduct prior to the seizure of evidence, the admissibility of that evidence depends upon whether " 'the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); see Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Cales, 493 F.2d 1215 (9th Cir. 1974); United States v. Bacall, 443 F.2d 1050 (9th Cir.), cert. denied, 404 U.S. 1004, 92 S.Ct. 965, 30 L.Ed.2d 557 (1971).

See United States v. Cella, 568 F.2d 1266, 1284–87 (9th Cir. 1977) (evidence from source independent of that infected by illegal seizure need not be suppressed).

■ Even assuming that the arrest of Hauser was unlawful, the District Court did not err in denying Hauser's motion to sup-

---

2. *See United States v. Prescott,* 581 F.2d 1343, 1350 (9th Cir. 1978) ("[A]bsent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest.").

press evidence seized pursuant to the lawful search warrant that was subsequently issued.

AFFIRMED.