**UNITED STATES of America, Plaintiff,**

v.

**Stephen PAGEAU and Leonard Welch, Defendants.**

**No. 81–CR–85.**

United States District Court, N. D. New York.

Nov. 30, 1981.

George H. Lowe, U. S. Atty., N. D. N. Y., Syracuse, N. Y., for plaintiff; Paula M. Ryan, Asst. U. S. Atty., David B. Adler, Atty., Crim. Section, Dept. of Justice, Syracuse, N. Y., of counsel.

Paul V. French, Albany, N. Y., for defendant Stephen Pageau.

Rowley & Forrest, Albany, N. Y., for defendant Leonard Welch; Thomas Forrest, Albany, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I.

### BACKGROUND.

Defendants are Corrections Officers employed by the New York State Department of Correction at the Clinton Correctional Facility. In the indictment they are charged with depriving John Eng, an inmate of the facility, of rights protected by the Constitution and laws of the United States, in violation of 18 U.S.C. § 242. Specifically, it is alleged that defendants "... did, aiding and abetting each other, willfully strike, beat and assault John Eng ..." on July 5, 1980. Claiming to be in possession of a certain videotape depicting the alleged incident, the Government moved for a pretrial determination respecting the admissibility of that evidence. Defendants objected to the holding of a pretrial evidentiary hearing and moved to exclude the videotape or its sound portion. In the event that a hearing were held, they sought disclosure of the grand jury testimony of certain named and unnamed witnesses who testified to the authenticity of the tape, of the names and addresses of the witnesses who had custody of it, and of all documents relating to its chain of custody. Defendants' motion also included a demand for a transcript of the grand jury testimony of John Eng, production of Mr. Eng's prison record and a bill of particulars.

## II.

### THE RIGHT TO A PRETRIAL DETERMINATION OF ADMISSIBILITY.

 A motion respecting the admissibility of evidence made prior to trial must be determined prior to trial, unless the Court, for good cause, directs that it be deferred for determination until trial or until after the verdict; however, deferral is prohibited if a party's right to appeal would be affected adversely. Rule 12(e) Fed.R. Crim.P. Defendants argued that the issue of admissibility of the videotape was not capable of determination without a trial of the general issue and that a pretrial hearing would require duplication of a substantial part of the trial. *United States v. Barletta*, 644 F.2d 50 (1st Cir. 1981). Since the videotape in question was only one item of evidence, albeit an important one, the Court found that the question of its admissibility was not bound up with the trial of the general issue and that a substantial part of the trial would not be duplicated. Pretrial determinations of admissibility are favored, especially where, as here, the Government's right to appeal from the determination would be barred by the attachment of double jeopardy after the commencement of trial. *United States v. Appawoo*, 553 F.2d 1242 (10th Cir. 1977); *United States v. Winnie Mae Mfg. Co.*, 451 F.Supp. 642 (C.D.Cal.1978); 18 U.S.C. § 3731. Accordingly, the Court directed that a pretrial hearing be held for the purpose of determining the admissibility of the videotape.

## III.

### THE ISSUE OF CLOSURE OF THE PRETRIAL HEARING.

 Following the Court's determination to conduct a pretrial evidentiary hearing regarding the admissibility of the videotape, defendants moved to exclude the public and the press from the hearing, asserting that the necessary viewing of the tape would prejudice their right to a fair trial. Although they argued generally that this prejudice would arise in the context of the exposure of the tape to prospective jurors, they offered no specific evidence of potential harm. While it has been held that there is no independent Sixth Amendment right on the part of the public to attend pretrial hearings, *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1978), it would appear that First Amendment requirements mandate some minimum demonstration that pretrial publicity will jeopardize a fair trial and that moreover, alternatives less burdensome than closure are not available. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *United States v. Edwards*, 430 A.2d 1321 (D.C. App.1981). Since defendants made no showing of potential harm whatsoever, and since a less restrictive means to guarantee a fair trial, namely the voir dire examination of prospective jurors, is available, this Court denied the motion for closure after a showing of the tape in camera. However, because no determination as to the admissibility of the tape was made during the hearing, and the tape was not received in evidence at that time, the public and the press were denied the right to inspect and copy it. *See In re Application of National Broadcasting Co., Inc.*, 635 F.2d 945 (2d Cir. 1980).

## IV.

### THE USE OF GRAND JURY TESTIMONY AT THE HEARING.

 Defendants contended that they were entitled to the grand jury testimony of certain witnesses in connection with their challenge to the authenticity of the videotape at the pretrial hearing. Their reliance on the Jencks Act in support of that contention was misplaced, for the statute does not require the discovery or inspection of a prior statement by any Government witness "... until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500. Clearly, a pretrial hearing on the admissibility of evidence is not a trial, and the Court therefore denied the discovery requested. *See United States v. Ramirez*, 506 F.2d 742 (5th Cir. 1975); *see also United States v. Spagnuolo*, 515 F.2d 818 (9th Cir. 1975).

■ With respect to their application to obtain a copy of the entire grand jury testimony of John Eng, the alleged victim, defendants asserted that they have a "particular need" for this information, because only Eng and the United States Attorney have knowledge of the events occurring outside the view of the video camera. Rule 6(e)(3)(C)(i) Fed.R.Crim.P. The testimony at the hearing indicated that there are others who have this knowledge, and defendants have failed to establish a need particularly related to their defense. *United States v. Frumento*, 405 F.Supp. 23 (E.D.Pa. 1975). The testimony of Mr. Eng will be made available to defendants following his direct testimony at trial. 18 U.S.C. § 3500.

### V.

### ADMISSIBILITY OF THE VIDEOTAPE RECORDING.

Defendants argue that no proper foundation has been established for the admissibility of the videotape or for its sound portion. In particular, they argue that there was no testimony respecting the identity of the persons depicted or of the persons whose voices are heard, and no testimony that the videotape is a fair and accurate representation of the sights and sounds recorded. Defendants concede that there was substantial evidence as to the technical aspects of the installation and recording capabilities of the cameras and microphones located in the areas where the incidents took place. Correction Officer O'Brian testified in some detail as to how he operated the cameras at the time in question so as to record the incident, after he heard noises emanating from the gallery. Indeed, Officer O'Brian himself is shown on the tape as he entered the area depicted in order to investigate the incident. A fair reading of the testimony of Deputy Superintendent Sullivan reveals the identification of defendants as two of the persons depicted on the videotape. The Deputy Superintendent called for the officers involved in the incident in order to review the tape with them. Defendant Pageau was present during the review but defendant Welch was off duty because of injuries sustained in the incident. (Transcript p. 30).

In the opinion of the Court the videotape, including the sound portion thereof, has been authenticated by evidence that the tape is what the Government claims it to be—a record of certain events taking place in Gallery 3 of the Special Housing Unit, Clinton Correctional Facility, on July 5, 1980, shortly after 8:00 p.m. Rule 901(a) Fed.R.Evid. Evidence has been produced to describe the recording process and to demonstrate that the process produces an accurate result. Rule 901(b)(9) Fed.R.Evid.

■ Obviously, it was impossible for Officer O'Brian to testify that the camera produced a "fair and accurate representation" of the events recorded. However, under circumstances such as those presented here, a sufficient foundation is constructed by testimony as to the proper installation, activation and operation of the camera and by the chain of possession of the tape. *United States v. Taylor*, 530 F.2d 639 (5th Cir. 1976). This Court does not read *Mikus v. United States*, 433 F.2d 719 (2d Cir. 1970) and *United States v. Kelley*, 334 F.Supp. 435 (S.D.N.Y.1971) to *require* additional authenticating testimony, specifically attesting to the fairness and accuracy of the representation of the persons and events recorded. With regard to the sound portion of the tape, it is the Court's opinion that there need be no separate identification of the voice of each speaker as a condition for the admissibility of the entire videotape. *United States v. McKeever*, 169 F.Supp. 426 (S.D.N.Y.1958), *rev'd on other grounds*, 271 F.2d 669 (2d Cir. 1959), cited by defendants, is inapposite, since only a sound recording was the subject of inquiry there.

### VI.

### THE BILL OF PARTICULARS.

Defendants claim that they are entitled to a bill of particulars specifying the place, time and manner of occurrence of the events described in the indictment. Contending that only John Eng has the necessary information, they further assert that

defendants "... have a right to know whether or not it is claimed that they assaulted, beat or struck the inmate John Eng at any time when the video tape in question was not recording the particular event." (§ 15, affidavit of Thomas J. Forrest, October 9, 1981).

The Court finds no factual basis for the contention that the requisite information is possessed by John Eng alone. The indictment is sufficiently specific to enable the defendants to prepare their defense and to avoid suprise at trial. *United States v. Salazar*, 485 F.2d 1272 (2d Cir. 1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974). A bill of particulars here would merely serve as a device for the disclosure of the Government's evidence in advance of trial. *United States v. Anderson*, 481 F.2d 685, 690–91 (4th Cir. 1973), *aff'd* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

## VII.

### CONCLUSION.

Although the chain of custody of the videotape was sufficiently established, such evidence was unnecessary, in view of the proof of authentication. Rule 901 Fed.R. Evid. *See Kortz v. Guardian Life Insurance Co.*, 144 F.2d 676 (10th Cir. 1944); *see also United States v. Luna*, 585 F.2d 1(1st Cir. 1978), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). The motion to compel the Government to furnish the prison record of John Eng was withdrawn by the defendants by letter dated November 4, 1981.

Based upon all the foregoing, all relief sought by defendants is denied, the Government's motion is granted, and the videotape will be admissible at trial.

It is so Ordered.