OPINION AND ORDER

In this appeal, the defendants challenge their arrests and convictions for the possession of marijuana pursuant to Hopi Ordinance 21 § 3.3.55. They raise a number of issues on appeal, including that: (1) there was insufficient evidence to support their convictions because of certain inconsistencies in the incident report; (2) the judge was partial to the prosecution because the same judge that issued the search warrant conducted the trial; (3) their right to equal protection of the laws was violated; (4) the evidence was obtained in violation of their rights to be free of unreasonable searches and seizures; (5) the police engaged in certain misconduct during the search; (6) the police coerced a confession; (7) the trial court erred in admitting certain evidence against the defendants on evidentiary grounds; and (8) their substantive due process rights were violated.

FACTUAL AND PROCEDURAL BACKGROUND

This case revolves around the discovery of sixteen marijuana plants at a trailer *310 owned by Leroy Lewis.[1] On August 19, 1997, defendant Elmo Nevayaktewa was residing at the trailer because Lewis requested that Nevayaktewa be responsible for the guarding, care, and preservation of it.[2] On that evening, defendant Emily Verna Mutz was visiting Nevayaktewa.[3] Sergeant Bennett Chatter received two reports indicating that the defendants were growing marijuana plants in ice chests and cans in the last bedroom of the trailer.'[4]
Sergeant Chatter telephoned the Honorable Delford Leslie to request a warrant to search the trailer for marijuana.[5] Judge Leslie found that probable cause existed to believe that marijuana was present in the trailer and authorized Sergeant Chatter to sign his name on the original warrant that authorized the search of the trailer, a grey GMC pickup truck with New Mexico plates, and a red and white Chevrolet pickup truck.[6]
Sergeant Chatter and Officers Emerson Ami and Selanhongva McDonald proceeded to the trailer and served the search warrant upon Nevayaktewa,[7] Sergeant Chatter escorted the defendants to the front room while the other officers ascended to the second floor and found marijuana plants in the last bedroom.[8] Officer McDonald secured the front room and watched the defendants while Sergeant Chatter went into the room where the marijuana was found.[9] He saw fourteen marijuana plants in a white ice chest and two more plants in a large plastic container.[10] All sixteen plants were confiscated.[11] A subsequent search of the grey Chevrolet pickup truck with New Mexico license plates and the red and white GMC pickup truck parked in front of the trailer did not yield any new evidence.[12] Officer Ami used a personal video camera to record the search.[13]
The defendants were arrested for the possession of marijuana in violation of Hopi Ordinance 21 § 3.3.55.[14] Both defendants entered a plea of “not guilty” at their arraignments.[15] On August 28, 1997, *311 the actions were consolidated.[16] The Hopi Tribe filed a Motion for Change of Judge for Cause, asserting that the defendants could not receive a fair and impartial trial because Judge Leslie had issued the search warrant and was also prepared to sit at trial.[17] Evidently, the motion was denied.[18] The trial was conducted and the defendants were convicted of possession of marijuana and each were sentenced to ninety (90) days in jail and a $1,000 fine.[19] The defendants promptly appealed their convictions.[20]
An oral argument in this case was scheduled at the request of this Court for March 20, 1998. The appellants filed a Motion to Continue Oral Argument on February 26, 1998. Rule 37(j) of the Hopi Indian Rules of Civil and Criminal provides that the appellate court shall decide all cases on the record without oral argument unless “either party requests oral argument and shows to the court that such will aid the court’s decision, or unless the court decides on its own motion to hear oral argument”. In this case, neither party has requested oral argument. The court initially granted oral argument on its own motion, but the appellant sought to delay that oral argument. This court now finds that this case has been fully briefed and that the record before it is adequate to render a decision.

ISSUES PRESENTED ON APPEAL

The defendants assert that: (1) there was insufficient evidence to support their convictions because of certain inconsistencies in the incident report; (2) the judge was partial to the prosecution because the same judge that issued the search warrant conducted the trial; (3) their right to equal protection of the laws was violated; (4) the evidence was obtained in violation of their rights to be free of unreasonable searches and seizures; (5) the police engaged in certain misconduct during the search; (6) the police coerced a confession; (7) the trial court erred in admitting certain evidence against the defendants on evidentia-ry grounds; and (8) their substantive due process rights were violated.

DISCUSSION

The appellate court has jurisdiction over this appeal pursuant to Hopi Ordinance 21[21] and the Hopi Indian Rules of Civil and Criminal Procedure.[22] The de *312 fendants have complied with all of the requirements imposed by these statutes: (1)30 days imprisonment or fine greater than $50.00; (2) a final judgment; and (3) notice of appeal within 20 days of the final order. Having proper jurisdiction, the appellate court will adopt the trial court’s findings of fact unless they are clearly erroneous, but conclusions of law will be reviewed de novo. See Coin v. Moira, AP-005-95* (1997); Hopi Tribe v. Randolph, No. 96AC000006 (1997).
I. THE TRIAL COURT COULD CONCLUDE THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE DEFENDANTS’ CONVICTIONS DESPITE INCONSISTENCIES IN THE INCIDENT REPORT.
The defendants begin their attack on the judgment below by citing Hopi Ordinance 21 § 2.8.2[23] and arguing that inconsistencies in the police report should result in the reversal of their convictions. Specifically, the defendants complain because the incident report indicates that the search warrant was served on the defendants at 1:20 a.m., the defendants were arrested at 1:00 a.m., and the marijuana plants were found and confiscated at 12:20 a.m. However, a careful reading of the statute indicates that § 2.8.2 is not applicable to these types of irregularities. The statute only refers to irregularities in the “pleadings or proceedings.” See Hopi Ordinance 21 § 2.8.2. Therefore, it is limited to irregularities arising out of the trial, not irregularities in the evidence presented at trial.
However, this does not end our inquiry because Coin v. Mama, AP-005-95* (1997), holds that pleadings should be liberally construed when the movants true argument can be ascertained. In this case, the defendants are actually arguing that the inconsistencies in the incident report created a situation in which there was insufficient evidence to support their convictions. The Tribe claims that the incident report was never even admitted into evidence. See Brief of Respondent at 5:22-23. Even if the report had been admitted into evidence, the appellate court is not in a position to reevaluate the evidence presented to the trial court. Undoubtedly, the trial court was presented with other evidence regarding the search that was conducted. See id. at 5:23-25 (explaining that the police officers were called as witnesses to testify on behalf of the Tribe). Moreover, the trial court had access to a video tape that chronicled the events of the evening. See Appellants’ Brief at 2:9:10.[24] The trial court was free to lend more credibility to this other evidence. This court is in no position to second guess the trial court in its factual findings unless no trier of fact could come to that conclusion on the evidence. See Coin v. Mama, AP-005-95* (1997). Therefore, the inconsistencies in the incident report do not support the defendants’ argument for reversal of their convictions.
II. THE FACT THAT THE SAME JUDGE THAT ISSUED THE SEARCH WARRANT WOULD SIT AT TRIAL DOES NOT NECESSARILY REQUIRE THE DISQUALIFICATION OR REMOVAL OF THE JUDGE.
The defendants proceed to argue that their convictions should be reversed *313 because the trial judge should have been disqualified to serve at their trial. Two provisions of Hopi Ordinance 21 provide information concerning when a judge may be disqualified from serving in a case: § 1.5.1[25] and § 1.8.2.[26] According to these ¡two provisions, a judge may not hear the appeal of an issue heard by him, determine any case when he has a direct interest in the outcome, or sit if he could not decide the manner in a fair and impartial manner.[27] The defendants assert that the fact that Judge Leslie issued the search warrant deprived him of the ability to serve at them trial. According to the defendants, this fact gave him a direct interest in the outcome of the trial because he would be forced to pass upon the propriety of the original decision to issue the search warrant. In addition, this fact would render Judge Leslie incapable of conducting the trial in a fair and impartial manner because he had already come to a conclusion regarding their guilt.
No Hopi authority satisfactorily addresses these issues. Therefore, we are free to consult the decisions of other jurisdictions as persuasive authority. See Hopi Tribe v. Mahkewa, AP-002-92 (1995). In other jurisdictions, a trial judge is presumed to be free of bias and prejudice, and the rebuttal of this presumption requires the proof of specific grounds for the disqualification by a preponderance of the evidence. See Miller v. Superior Court, 189 Ariz. 127, 938 P.2d 1128 (App.1997); State v. Perkins, 141 Ariz. 278, 686 P.2d 1248 (1984). This is a sound rule because it requires the party that seeks judicial disqualification to present the evidence. The issue is whether the fact that the judge issued the search warrant is sufficient to disqualify him from serving at the subsequent trial. Several jurisdictions have addressed this specific question and concluded that the judge may issue the search warrant and serve at trial. See, e.g„ Irwin v. State, 441 S.W.2d 203 (Tex. Crim.App.1968); Heard v. State, 574 So.2d 873 (Ala.Crim.App.1990); Barron v. State, 682 So,2d 505 (Ala.Crim.App.1996); People v. McCann, 202 A.D.2d 968, 609 N.Y.S.2d 495 (1994). This is a sound rule because there is no intrinsic reason why the issuance of a search warrant would render the judge unduly partial to the prosecution. Moreover, if the judge does render a decision that is not consistent with the law, the defendants may appeal that decision. Therefore, the trial judge is still not acting as the final arbiter of probable cause. Because the defendants in this case have not offered any further evidence of partiality, their arguments are unfounded: Judge Leslie could serve at the trial.
III. THE DEFENDANTS WERE ADEQUATELY PROVIDED WITH THE EQUAL PROTECTION OF THE LAW.
The defendants also argue that their right to the equal protection of the *314 laws was violated. The Indian Civil Rights Act of 1968 provides that “[n]o Indian tribe in exercising the powers of self-government shall: ... (8) deny to any person the equal protection of the laws....” 25 U.S.C. § 1302(8) (1996). This language parallels language contained in the Fourteenth Amendment of the United States Constitution.[28] Nonetheless, the interpretation of the equal protection clause of the Indian Civil Rights Act is not constrained by federal interpretations of the Fourteenth Amendment. Rather, it should be interpreted with due regard for the historical, governmental, and cultural values of the Indian tribe. See, e.g., How-lett v. The SaMsh and Kootenai Tribes, 529 F.2d 233 (9th Cir.1976). With these principles in mind, we can review equal protection jurisprudence from other jurisdictions.
In federal jurisprudence, the equal protection clause seeks to assure that people who are similarly situated will be treated similarly. There are three levels of scrutiny that are used in judging whether a governmental classification violates the equal protection clause: strict scrutiny, middle-level review, and mere rationality review.
Strict scrutiny is reserved for distinctions that are based upon a “suspect classification” or that impair a “fundamental right.” Where strict scrutiny is invoked, the classification will be upheld only if it is necessary to promote a compelling State interest.[29] The three suspect classes are race,[30] national origin,[31] and alienage.[32] The fundamental rights are the right to vote[33] and the right to migrate interstate.[34] Under mid-level review, the classification must be substantially related to an important governmental objective.[35] Mid-level review is applied to classification based upon gender[36] and illegitimacy.[37] All other classifications are subjected to mere rationality review. Under this review, the classification is upheld as long as it is conceivable that the classification bears a rational relationship to a legitimate *315 governmental objective.[38]
1 ⅜ The tribal court of another tribe has |⅜. proposed the following test to determine 1whether governmental action violates the j t equal protection clause of the Indian Civil j Rights Act: whether the authorities have i treated an individual different from others /: and this difference is based upon bad faith or impermissible grounds like race, religion, or the exercise of other constitutional ? rights. See Bums Paiute Tribe v. Dick, j 22 Indian L. Rep. 6016 (1994). Moreover, J another tribe has cautioned that it is im-t; portant to look for a proper justification j for the distinction. See Skokomish Indian I; Tribe v. Samar, 5 Indian L. Rep. L-4 U (1978).
It is unnecessary to adopt any of these interpretations as an accurate statement of Hopi law because the defendants have failed to show that they were deprived of the equal protection of the laws under any of these formulations. The defendants have not articulated whether they were deprived of equal protection because they were arrested when other individuals growing marijuana were not or because they were imprisoned while those who did not violate Hopi Ordinance 21 § 3.3.55 were not. Under the federal approach, either classification would be subjected to mere rationality review. If the defendants are arguing that they were treated different than other individuals violating the law because they were arrested while the others were not, it is sufficient to note that, under federal law, the State may deal with only part of a problem. See, e.g., Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). If, on the other hand, the defendants are arguing that they have been treated different than those who have not violated the criminal laws, it is sufficient to note that the fact that the defendants violated the law justifies treating them differently by imprisoning them. Moreover, the defendants have failed to satisfy the Burns Paiute test because they have failed to allege, much less prove, bad faith or other impermissible grounds for the actions at issue in this case. Therefore, the defendants have not been deprived of the equal protection of the laws.
IV. THE SIXTEEN MARIJUANA PLANTS WERE NOT OBTAINED AS THE RESULT OF AN UNREASONABLE SEARCH OR SEIZURE.
The defendants also argue on appeal that the search of the trailer and the trucks and the seizure of the marijuana plants violated their right to be free from unreasonable searches and seizures under the Indian Civil Rights Act of 1968. See 25 U.S.C. § 1302(2) (1996).[39] Like the Fourth Amendment,[40] the Indian Civil *316 Rights Act creates a preference for the use of the warrant procedure. The warrant procedure is the favored approach because it creates an orderly procedure whereby a neutral and detached magistrate may make an informed and deliberate decision regarding probable cause. See, e.g., United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964): Moreover, this ex ante procedure is preferred to ex post determinations because it helps prevent judicial biases that may arise after incriminating evidence has been obtained, and it also helps prevent police perjury because it is more difficult to fabricate a story ex ante. See Stuntz, Warrants and Fourth Amendment Remedies, 77 Va. L.Rev. 881 (1991).
Hopi Ordinance 21 permits defendants to suppress evidence that has been unlawfully obtained. See Hopi Ordinance 21 § 2.7.7.[41] In this case, the police did obtain a warrant. Despite the fact that the warrant procedure is favored, defendants can still challenge the legitimacy of a facially sufficient search warrant. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). As this court articulated in Hopi Tribe v. Randolph,, No. 96AC000006 (1997), the defendant-bears the burden of production and the burden of persuading the court by a preponderance of the evidence that evidence obtained pursuant to a warrant nonetheless was illegally obtained. The defendants assert three reasons why the search warrant was invalid and the evidence illegally seized: (1) the judge did not personally sign the warrant; (2) the warrant should have been served upon the owner of the trailer. Leroy Lewis, rather than upon the defendants; and (3) the warrant did not particularly describe the places to be searched. None of these arguments have merit.
First, the defendants rely upon the definition of the term “search warrant” contained in Hopi Ordinance 21 § 2.4.1 [42] for the proposition that the issuing judge must personally sign the search warrant. The defendants protest because Judge Leslie issued a telephonic search warrant and allowed Sergeant Chatter to sign the judge’s name. The defendants ignore the fact that the term “signed” is broadly defined in Hopi Ordinance 21.[43] More importantly, the defendants are attempting *317 to circumvent the holding in Hopi Tribe v. Miguel, 93 CR001527 (1993). that telephonic search warrants are permitted in Hopi courts. See also Ariz.Rev.Stat. Ann. §§ 13-3914(e), 13-3915(c) (1997); Comment, 24 Williamette L.Rev. 967 (1988) (on Oregon practice); State v. Lopez, 676 P.2d 393 (Utah 1984); State v. Lindsey, 473 N.W.2d 857 (Minn.1991); State v. Valencia, 93 N.J. 126, 459 A.2d 1149 (1983); Fed.R.Crim.P. 41(c)(2), permitting oral search warrants in other jurisdictions. How else can a telephonic search warrant be signed? Therefore, the defendants’ argument lacks merit.
Second, the defendants contend that the search warrant should have been served upon the owner of the trailer, Leroy Lewis. However, “[w]hat is generally required is that the officer ‘give appropriate notice of his authority and purpose to the person ... in apparent control of the premises to be searched.’ ” Wayne R. La-Fave, Search and Seizure-. A Treatise on the Fourth Amendment § 4.8(c) (3d ed.1996) (quoting Model Code of Pre-Ar-raignment Procedure § SS 220.3(2) (1975)) (footnotes omitted); Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). In this case, the defendants were in apparent control of the trailer. Presenting the search warrant to the defendants served the purposes of the notice requirement. Specifically, the notice requirement serves to decrease the potential for violence because there will be no unannounced breaking and entering into the house, protects privacy interests because it minimizes the chances that the wrong premises will be searched, and prevents the physical destruction of property because no breaking and entering will be necessary. See Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.8(a) (3d ed.1996). Therefore, the warrant was served upon the proper parties in this case.
Finally, the defendants assert that the search warrant failed to particularly describe the places to be searched in violation of Hopi Ordinance 21 § 2.4.2[44] and the Indian Civil Rights Act of 1968.[45] Specifically, the defendants object on two grounds. First, the search warrant provided that a grey GMC pickup truck with New Mexico plates and a red and white Chevrolet pickup truck could be searched while the police officers actually searched a Grey Chevrolet pickup truck and a red and white GMC pickup truck with New Mexico plates. Second, the defendants object because the warrant authorized the search of the entire house even though the police only had probable cause to believe that the marijuana was located in one room. With regard to the description of the trucks, the colors of the trucks had been reversed and the plates had been reversed. What the defendants fail to recognize is that the most important information in the warrant was the location of the trailer. When the police arrived at the trailer and saw the two trucks on the premises, it was easy to recognize that a minor error had occurred in the search warrant. It was still clear which trucks were to be searched. See Bowling v. State, 219 Tenn. 224, 408 S.W.2d 660 (1966); State ex rel. Flournoy v. Wren, 108 Ariz. 856, 498 P.2d 444 (1972). Moreover, none of the marijuana was found in the trucks. Therefore, the defendants suf *318 fered no injury even if the trucks were not particularly described. With regard to the trailer, the defendants assert that the warrant was overbroad because it permitted the police to search too much of the trailer. However, when police have probable cause to believe that contraband is contained within a home or trailer, it is appropriate to allow the police to search anywhere in the trailer or home where the contraband may be contained. If this search were not permitted, defendants could move the contraband when the police arrived and render it outside the scope of the warrant. This is an absurd result that would incredibly reduce the effectiveness of law enforcement without any corresponding benefit to legitimate privacy interests because the police already have probable cause to believe that contraband is on the premises. Therefore, the defendants’ challenges to the validity of the search are unfounded.
V. THE DEFENDANTS FAILED TO PROPERLY RAISE THE ISSUE OF POLICE MISCONDUCT.
The. defendants raise the issue of potential police misconduct for the first time in their brief before this court. The defendants assert that “[i]t is believed that Sgt. Chatter added the Vehicles on the Search Warrant after the fact.” Appellants’ Brief at 4:25-26. This is a serious charge of misconduct that cannot be condoned in a system that values the submission of questions of probable cause to a neutral and detached magistrate. See supra part IV. However, the defendants failed to properly preserve this issue for consideration. Parties are not entitled to a trial de novo in the appellate court. See Hopi Resolution H-12-76.[46] Instead, the parties must raise all issues before the trial court in the first instance. This court does not resolve factual disputes. See Com v. Moim, A P-005-95* (1997). The fact that the defendants failed to raise this issue at their trial accomplished a waiver of the argument. See Hopi Tribe v. Ami, AP-003-89* (1996).
As other jurisdictions have explained. “[i]t is a well-established principle that in most instances an appellant may not present arguments in the Court of Appeals that it did not properly raise below.” Rothman v. Hospital Service of Southern California, 510 F.2d 956, 960 (9th Cir.1975); see also Wolf v. Banco Nacional de Mexico, S.A., 739 F.2d 1458, 1460 (9th Cir.1984), cert, denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990). These jurisdictions do permit an issue to be raised for the first time on appeal if: (1) there are exceptional circumstances why the issue was not raised in the trial court; (2) the new issue arises while the case is pending on appeal because of a change in the law; or (3) the issue raised is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court. See United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990). However, none of these conditions are satisfied in this case. In their brief before this court, the defendants fail to assert any reason why this issue was not raised before the trial court. Moreover, there has been no change in the law. and the issue is not purely one of law. Instead, this court would have to make a detailed factual inquiry regarding whether the trucks were included in the original search warrant. This is not the proper function for this court. Moreover, remanding all cases in which defendants raise new issues on appeal would undermine the finality of the *319 criminal process and condone vexatious litigation tactics by defendants. Therefore, the defendants have waived their arguments regarding police misconduct.
VI. THE DEFENDANTS FAILED TO ASSERT ANY PREJUDICE ARISING FORM THE ALLEGED COERCED CONFESSION OF DEFENDANT MUTZ.
The defendants further contend Ithat the police violated the rights of defendant Mutz by questioning her without ad-jy vising her of her Miranda rights. See Jy Appellants’ Brief at 6:9-11. Miranda |-.⅞ rights arose in the seminal United States Supreme Court decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the Supreme Court held that the Fifth Amendment [47] privilege against self-incrimination t is available outside of criminal court proceedings and imposed certain safeguards that would protect the right unless the federal or state governments devised other alternatives. The Court held that an individual must be: (1) informed of his right to remain silent; (2) told that anything said could and would be used against the individual in court; and (3) informed of his right to counsel. See id. If police compel a confession without providing these warn-¡V ings, the confession is inadmissible. See id. Similar to the Fifth Amendment, the Indian Civil Rights Act of 1968 contains a |privilege against self-incrimination. See 25 U.S.C. § 1302(4) (1996).[48] However, we are not required to delineate the precise scope of this privilege in this opinion because the defendants have failed to show any prejudice arising from the questioning of defendant Mutz. She did not volunteer any information that was later admitted at trial. Instead, she merely replied “I don’t know.” See Appellants’ Brief at 6:9-11. Hence, there was no confession to exclude from this trial and reversal of the conviction is not required. See United States v. Sullivan, 421 F:2d 676, 677 (5th Cir.1970) (per curiam).
VII. THE TRIAL COURT PROPERLY ADMITTED THE MARIJUANA AND THE VIDEO TAPE INTO EVIDENCE DESPITE THE DEFENDANTS’ OBJECTIONS THAT THE PROSECUTOR FAILED TO PROPERLY ESTABLISH THE CHAIN OF CUSTODY.
The defendants further argue that the trial court erred in admitting certain items into evidence. Specifically, the defendants contend that the trial court erred in admitting the marijuana and the video tape into evidence because the prosecutor never established the chain of custody. The Hopi Indian Rules of Civil and Criminal Procedure provide that. “[wfritten documents and other physical evidence shall be received upon being identified and a showing of relevance to the action.” H.I.R.C.C.P. Rule 18(c). In order to introduce tangible evidence at trial, the party should mark, identify, authenticate, and offer the evidence. See Richard D. Friedman, The Elements of Evidence 99 (1991). To identify and authenticate the evidence, the witness is asked what the evidence is (identification) and how he knows that the evidence is what he says it. is (authentiea *320 tion). See 'id. at 100. Authentication can be accomplished in several ways. One way to authenticate evidence is by establishing the chain of custody. See id. This was apparently the method adopted by the prosecutor in this case. See Appellants’ Brief at 6:16-27 and 7:7-13. The defendants objected that the chain of custody was never established. However, a break in the chain of custody does not render the evidence inadmissible. Rather, a break in the chain of custody goes to the weight, not the admissibility, of the evidence. See, e.g., United States v. Sparks, 2 F.3d 574, 581 (5th Cir.1993); United, States v. Shaw, 920 F.2d 1225, 1229-30 (5th Cir.). cert. denied, 500 U.S. 926, 111 S.Ct. 2088, 114 L.Ed.2d 122 (1991); United States v. Cas-to, 889 F.2d 562, 568-69 (5th Cir. 1989). Moreover, there is no special rule regarding the admissibility of video tapes, they are admissible as long as they are authenticated. See, e.g., United States v. Pageau, 526 F.Supp. 1221 (N.D.N.Y.1981): United States v. Hobbs, 403 F.2d 977, 978-79 (6th Cir.1968); Milcus v. United States, 433 F.2d 719 (2d Cir.1970).[49] Therefore, the trial court properly admitted these items into evidence.
VIII. THE DEFENDANTS’ SUBSTANTIVE DUE PROCESS RIGHTS WERE NOT VIOLATED.
 Finally, the defendants contend that their substantive due process rights were violated because the trial was not conducted in a fundamentally fair manner. The defendants entire argument on this facet of the case is that “[t]he evidence confiscated was willfully altered by Sgt Chatter. The erroreaous [sic] admission of the altered evidence by the Trial Court and the trier of facts [sic] failure to correct the mistake of injustice [sic] has caused a lack of fundamental fairness.” Appellants’ Brief at 8:15-18.
This court has only addressed the concept of “fundamental fairness” in the civil proceeding context. In Johnson v. Belgarde, CIV-019-88, AP-003-94 (1996), this court held that under Hopi custom and tradition, a general concept of fairness is required in legal proceedings. The court further held that at a minimum, fundamental fairness required notice and an opportunity to be heard. See id.; see also Day v. Hopi Election Board, No. C1V-003-88, 16 Indian L. Rep. 6057, 6058 (1988). Because of its basis in Hopi custom and tradition, fundamental fairness must always be determined within the context of Hopi values.
In addition to Hopi custom and tradition, the Indian Civil Rights Act of 1968 also requires certain fundamental fairness in all legal proceedings. The Indian Civil Rights Act provides that “No Indian tribe in exercising the powers of self-government shall: ... (8) ... deprive any person of liberty or property without due process of law....” 25 U.S.C. § 1302(8) (1996). This guarantee is similar to the guarantee in the United States Constitution that “nor shall any State deprive any person of life, liberty, or property, without due process of law....” U.S. Const, amend. XIV. § 1. This language has been interpreted to require certain fundamental fairness in the conduct of trials. See, e.g., Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 *321 (1935); Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).
“Fundamental fairness” has never acquired a precise definition. Fundamental fairness requires adherence to those “principles of liberty and justice”[50] that are “implicit in the concept of ordered liberty.”[51] that are “so rooted in the traditions and conscience of our people as to be ranked as fundamental.”[52] and that “lie at the base of all our civil and political institutions.”[53] Moreover, it prohibits actions that “offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses” [54] and that are “repugnant to the conscience of mankind.”[55]
As the concept of “fundamental fairness” has been applied in specific cases, certain principles became clear. First, the court must find that the absence of fairness fatally infected the trial. In other words, the acts complained of must be of such a quality as to necessarily prevent a fair trial. See Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941). Accordingly, the categories of infractions that violate fundamental fairness have been defined very narrowly. See Dowling v. United States, 493 U.S. 342, 110 S.Ct, 668, 107 L.Ed.2d 708 (1990); Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Indeed, judges are not free, in defining due process, to impose on law enforcement officials their personal and private notions of fairness. See Rochin v. California, 342 U.S, 165, 72 S.Ct. 205, 96 L.Ed. 183(1952). In sum, a litigant claiming the absence of fundamental fairness carries a heavy burden to establish that the act complained of threatens the basic fairness of the trial itself.
In this regard, it has been held that several defects in the trial process do not violate fundamental fairness. See, e.g., O’Dell v. J.D. Netherlands 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (not allowing a capital defendant to inform the sentencing jury that he is parole-ineligible when the prosecution raises an issue regarding his future dangerousness does not violate fundamental fairness); Gray v. Netherlands 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (the failure of the prosecutor to give the defendant adequate notice of the evidence that the Commonwealth would introduce in the sentencing phase of the trial did not violate fundamental fairness); Carlisle v. United States, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (the inability of a district court to grant an untimely post-verdict motion for a judgment of acquittal did not violate fundamental fairness); Graham v. Collins, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (the failure of the judge to give special jury instructions concerning mitigating evidence of youth, family background, and positive character traits during a sentencing hearing did not violate fundamental fairness); Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (the failure to grant a new trial when new evidence was found eight years after the original trial did not violate fun *322 damental fairness); Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (the failure of the State to provide counsel for a discretionary appeal where the defendant already had one appeal as of right did not violate fundamental fairness); Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (the failure by the police to inform the attorney who had been retained by the suspect’s sister without the suspects knowledge that the interrogation would continue that night did not violate fundamental fairness); Hobby v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984) (discrimination in the selection of the foreman of the grand jury does not violate fundamental fairness).
Other defects in the trial process have been found to violate fundamental fairness. See, e.g., Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373,184 L.Ed.2d 498 (1996) (presuming that a defendant is competent unless he proves incompetence by clear and convincing evidence, rather than be a preponderance of the evidence, violates fundamental fairness because it infects the entire trial); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (the prosecutor’s deliberate deception of the court and jury through the knowing use of perjured testimony violates fundamental fairness); Waimvright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (admitting evidence in violation of a defendant’s Miranda rights violates fundamental fairness); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (the cumulative effect of all of the trial courts evidentiary rulings deprived the defendant of the ability to present an effective defense and violated fundamental fairness).
This review of the existing case law indicates that fundamental fairness is violated when the defendant is deprived of the opportunity to present an adequate defense. This deprivation may arise from presuming that the defendant is competent because an incompetent defendant cannot raise an effective defense, by deliberate deception by an officer of the court, by the cumulative effect of evidentiary rulings that exclude critical evidence, or an unlimited number of other means. Nonetheless, defendants are not entitled to a perfect trial, only a fair trial. The defendants in this case imply that the trial court should have known that someone had tampered with the evidence and should have excluded the evidence. At no time were the defendants deprived of the opportunity to present this defense. However, the defendants have never alleged, nor proven, any facts that substantiate their claims. Because the defendants were free at all times to present this defense, the trial was not devoid of fundamental fairness.

ORDER OF THE COURT

For the foregoing reasons, the judgment of the trial court is AFFIRMED and the case is REMANDED to the trial court for execution of the judgment.

. See Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 1.

. See id. at 3.

. See Defendants' Memorandum of Points and Authorities in Response to Motion to Deny Defendants’ Motion to Dismiss at 1. These are the facts most favorable to the defendants. According to the prosecutor, the defendants both resided at the trailer. See Hopi Tribe’s Memorandum of Points and Authorities in Response to Motion to Dismiss at 2.

. See Hopi Tribe's Memorandum of Points and Authorities in Response to Motion to Dismiss at 2.

. See id.

. See id.; Defendants’ Memorandum of Points and Authorities in Response to Motion to Deny Defendants’ Motion to Dismiss at 1.

. See Incident Report at 2.

. See id.

. See id.

. See id.

. See id. at 3.

. See id.; Defendants' Memorandum of Points and Authorities in Response to Motion to Deny Defendants’ Motion to Dismiss at 1.

. See Appellants’ Brief at 2:9-10.

. See Incident Report at 3. Hopi Ordinance 21 provides that "[a]ny Indian who produces, delivers, possesses, or sells marijuana shall be deemed guilty of an offense." Hopi Ordinance 21 § 3.3.55.

. See Hopi Tribe’s Memorandum of Points and Authorities in Response to Motion to Dismiss at 1.

. See id.

. See Hopi Tribe’s Memorandum of Points and Authorities in Support of Motion for Change of Judge for Cause at 1.

. See Defendant's Petition for Stay Pending Appeal at 1.

. See Hopi Tribe's Response to Petition for Stay of Execution Pending Appeal at 1.

. See Defendants’ Notice of Appeal at 1.

. Hopi Ordinance 21 provides:
1.2.5 JURISDICTION. The Appellate Court of the Hopi Tribe shall have Jurisdiction to hear appeals from final judgments and other final orders of the Tribal Court of the Hopi Tribe, except in criminal cases where the defendant is sentenced to less than thirty days imprisonment or labor and/or to pay a fine of less than $50.00. In such cases, there shall be no right of appeal.
Hopi Ordinance 21 § 1.2.5.

.The Hopi Indian Rules of Civil and Criminal Procedure provide in pertinent part:
[[Image here]]
b) Right to Appeal. Any party who is aggrieved by a final order, commitment or judgment of the trial court may appeal in the manner prescribed by this Rule.
c) Time; Notice of Appeal. Within 20 days from the entry of the order of judgment appealed from the party taking the appeal must file with the trial court a written notice of appeal specifying the parties to the appeal, the order or judgment appealed from, and a short statement of the reasons for the appeal....
*312 H.I.R.C.C.P. Rule 37,

. Hopi Ordinance 21 provides, “[njeither a departure from the form or mode prescribed in this chapter in respect to any pleading or proceedings nor an error or mistake therein renders it invalid, unless it has prejudiced the defendant.” Hopi Ordinance 21 § 2.8.2.

. The admissibility of the video tape will be discussed infra part VII.

. “DISQUALIFICATION & REMOVAL. No Judge shall hear or determine an appeal from the decision of a case or issue tried by him. No judge shall hear or determine any case on original trial or appeal when he has a direct interest in the outcome of the case.. .. ” Hopi Ordinance 21 § 1.2.5.

. “DUTIES. It is the duty of the Tribal Courts to hear and determine all cases before it in a fair and impartial manner and to discretely exercise the powers in it vested, to the end that justice may be administered and law and order maintained.” Hopi Ordinance 21 § 1.8.2.

.If the judge could not decide the manner in a fair and impartial manner, this would also likely violate the defendant's due process rights contained in the Indian Civil Rights Act of 1968: "No Indian tribe in exercising the powers of self-government shall: ... (8) ... deprive any person of liberty or property without due process of law ....” 25 U.S.C. § 1302(8) (1996).

. “Nor shall any State . .. deny to any person within its jurisdiction the equal protection of the laws." U.S. Const, amend XIV, § 1.

. See, e.g., Brown v. Bd. of Education of Topeka Kansas, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); Sugarrnan v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973).

. See, e.g., Brown v. Bd. of Education of Topeka Kansas, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

. See, e.g., Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954),

. See, e.g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); Sugarrnan v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973).

. See, e.g., Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Dunn v. Blum stein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

. See, e.g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

. See, e.g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Roslker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

. See, e.g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981).

. See, e.g., Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

. See, e.g., Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); United States Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); Massachusetts Bd. of Re-tiretnent v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

. The Indian Civil Rights Act provides that:
No Indian Tribe in exercising the powers of self-government shall: ...
(2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.
25 U.S.C. § 1303(2) (1996).

. The Fourth Amendment provides that
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly de *316 scribing the place to be searched, and the persons or things to be seized.
U.S. Const, amend IV.

.Hopi Ordinance 21 provides:
2.7.7 MOTION TO SUPPRESS EVIDENCE. A defendant has the right to file with the Trial Court a motion to suppress evidence which he contends has been obtained from him in an unlawful manner. The evidence in question may be a tangible item or an intangible item. If the Trial Court is satisfied that the evidence has been unlawfully obtained, it shall order the evidence suppressed. If the Trial Court decides that the evidence was lawfully obtained, it may be used against the defendant.
Hopi Ordinance 21 § 2.7.7.

. Hopi Ordinance 21 provides, “[a] search warrant is an Order in writing, signed by the Trial Court judge, directed to any enforcement officer ... commanding him to search for items or articles designated in the warrant and bring them before the Hopi Trial Court.” Hopi Ordinance 21 § 2.4.1.

. Hopi Ordinance 21 provides
2.1.1 SIGNATURE—Defined. The act of putting down a man's name at the end of an instrument to attest its validity. A signature may be written by hand, printed, stamped, typewritten, or engraved. And whatever mark, symbol, or device one may choose to employ as representative of himself is sufficient.
Hopi Ordinance 21 § 2.5.1.

. Hopi Ordinance 21 provides that "[a] search warrant shall not be issued except upon probable cause, supported by oath or affirmation, naming or describing the person, and particularly describing the articles or items to be seized, the place to be searched, and the reason or reasons for its issuance.” Hopi Ordinance 21 § 2.4.2.

. See25U.S.C.§ 1302(2)(1996).

. This Resolution provides that “[t]here shall be no right to a trial de novo (new trial) in appeals from the Trial Courts to the Appellate Court...." Hopi Resolution H-12-76.

. The Fifth Amendment provides that a defendant shall not be compelled "in any criminal case to be a witness against himself. ..." U.S. Const, amend. V.

. The Indian Civil Rights Act of 1968 provides that “[n]o Indian tribe in exercising the powers of self-government shall: ... (4) compel any person in any criminal case to be a witness against himself....” 25 U.S.C. § 1302(4)(1996).

. The defendants do not assert that the video taping of the search constituted an unreasonable search in violation of the Indian Civil Rights Act of 1968. See 25 U.S.C. § 1302(2) (1996). Therefore, we do not offer any opinion on this issue.

. Hurtado v. California, 110 U.S. 516, 535, 4 S.Ct. 111, 28 L.Ed. 232 (1884).

. Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

. Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

. Hurtado, 110 U.S. at 535, 4 S.Ct. 111.

. Malinski v. New York, 324 U.S. 401, 417, 65 S.Ct. 781, 89 L.Ed. 1029 (1945) (Frankfurter, J., concurring).

. Palko, 302 U.S. at 323, 58 S.Ct. 149.